# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL N. BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00330 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **EARL R. BARKSDALE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Michael N. Brown, Pro Se Plaintiff; Nancy Hull Davidson, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Barksdale, Parr, Messer, Fore, Mullins, and Owens; Mary Foil Russell, Russell Law Firm, Bristol, Virginia, for Defendant Gullion.*

Michael N. Brown, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials delayed treatment for his broken foot. After review of the record, I conclude that the defendants' dispositive motions must be granted.

## I.

Brown is incarcerated at Red Onion State Prison ("Red Onion") in a segregation cell. At about 9:00 a.m. on the morning of July 3, 2015, while kicking the door of his cell because an officer refused him a shower, Brown broke a bone in his right foot. Brown allegedly told two defendants, Officer

Mullins and Nurse Gullion,[1] that he had broken his foot, but they did nothing for him. In the next several hours, Brown allegedly filed six Emergency Grievance forms, asking for medical attention for a broken foot. He alleges, "The defendants proceeded to destroy each Emergency Grievance I placed in my cell door #320 that day to prolong my suffering and deny me access to medical treatment."[2] Compl. ¶ 4, ECF No. 1.

About 3:00 p.m. during afternoon rounds, Nurse Gullion and Officer Owens came to Brown's cell door and looked at Brown's foot. Gullion states that was foot was "swollen and red, but there was no life threatening emergency." Gullion Aff. ¶ 10, ECF No. 29-1. Gullion said that he would ask someone to sign the Emergency Grievance form and have Brown brought to medical.

An hour later, Sergeant Fore allegedly "removed and destroyed that 5th Emergency Grievance," gave Brown a blank form, and told him to "fill this one out without naming any Guards [and] then [he] could go to medical for an

---

[1] Brown's Complaint identified the nurse who responded to his Emergency Grievance as "Nurse Gillian." Because the defendant's submissions indicate that the name is spelled Gullion, I have used this spelling and will direct the clerk to correct the court's docket.

[2] Mullins does not recall that he denied Brown a shower or that Brown told him that his foot was broken on July 3. Nurse Gullion states that no one asked him during morning rounds to examine Brown, and Mullins and Fore deny destroying any Emergency Grievance that day.

evaluation." Compl. ¶ 7, ECF No. 1. Brown did so, Fore accepted the Emergency Grievance, and Nurse Gullion marked that the situation was "an emergency" for which Brown would be brought to medical. Compl. Ex. A, ECF No. 1-1.

Between 4:26 and 4:55 p.m., Fore escorted Brown to medical, where other medical staff monitored his condition. The next morning, staff notified Dr. Smith, who verbally ordered an ice pack two times per day, continued pain medication, elevation of the injured foot, and an X ray. The X ray, performed on July 6, indicated a "NONDISPLACED FRACTURE THE BASE OF THE FIFTH METATARSAL." Gullion Aff. ¶ 17, ECF No. 29-1. Staff provided Brown with an elastic bandage that he wrapped around his foot.

Brown thereafter filed this § 1983 action against Defendants Barksdale, Parr, Messer, Fore, Mullins, Owens, Gullion, and a John Doe officer, seeking monetary damages. Barksdale, Parr, Messer, Fore and Mullins have filed a Motion for Summary Judgment, and Owens has filed a Motion to Dismiss. By separate counsel, Gullion has filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Brown has responded to all the motions, and I find them ripe for disposition.

II.

The Prison Litigation Reform Act, among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Operating Procedure 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Messer Aff. ¶ 4 & Enclosure A, ECF No. 25-3. Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison staff. *Id.* at ¶ 6. The form clearly states: Only one issue per Informal Complaint." *Id.* at Enclosure B. Under OP 866.1(V)(B)(3), a

staff member receiving an Informal Complaint shall log it into VACORIS (the VDOC's computer data base) and give the inmate a receipt form. OP 866.1(V)(D) states that Informal Complaints "must be addressed at the facility level and may not be referred to departments outside the facility." *Id*. at Enclosure A.

An inmate should receive a written response on the bottom of the Informal Complaint form within fifteen days, in order to allow him to initiate the formal grievance procedure by filing a Regular Grievance within thirty days of the occurrence about which it complains. *Id*. at ¶ 6. The Regular Grievance form clearly states: "Only one issue per grievance will be addressed." *Id.* at Enclosure B. After investigation of the Regular Grievance, the warden or his designee will send the inmate a Level I response. *Id*. at ¶ 8. If the responding official determines the grievance to be "unfounded," the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. *Id.* OP 866.1(VI)(D)(5) states: "Expiration of a time limit . . . at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review." *Id*. at Enclosure A.

If a Regular Grievance does not meet the filing requirements of OP 866.1, the grievance coordinator will reject the document at intake, mark the reason for the rejection on the back of the form, and return it to the inmate within two days. *Id*. at ¶ 5. The inmate can appeal the intake rejection decision to the regional

ombudsman. *Id.* Proper exhaustion, however, requires the inmate to timely file a Regular Grievance and pursue it through the highest applicable level of appeal within the applicable time limits at each stage.

OP 866.1(VII)(A) provides an Emergency Grievance procedure, intended to be used by an inmate when he seeks an expedited staff response to "a substantial risk of imminent sexual abuse" or a situation subjecting him to "immediate risk of serious personal injury or irreparable harm." This procedure is entirely separate from the Regular Grievance procedure and appeals. OP 866.1(VII)(F) requires a staff response to an Emergency Grievance within eight hours from receipt.

Defendants Parr, Barksdale, Messer, Fore, Mullins, and Gullion contend that they are entitled to summary judgment because Brown failed to exhaust administrative remedies properly before filing this § 1983 action.[3] I must agree. Brown has submitted his Verified Statement Form indicating that he exhausted available administrative remedies. The undisputed remedy forms now in the record, however, demonstrate that he did not properly do so.

Sergeant Fore logged an Emergency Grievance as received from Brown on July 3 at 4:00 p.m. that stated: "I broke my foot at 9 o'clock this morning kicking

---

[3] An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must take the non-movant's evidence as true and draw "all justifiable inferences" from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

the door because the floor officers refused to give me my shower[. T]his is the 6th emergency Grievance I've wrote [sic] because the officers I named in them destroy[e]d them all day long refusing to process them." Compl. Ex. A, ECF No. 1-1. Nurse Gullion checked the "emergency" box on the form and responded: "You are going to be moved to medical to be evaluated, to determine if your foot is broken. If so authorization will need to be given so you can receive the proper treatment." *Id.* Brown's Emergency Grievance(s) did not replace any of the steps he was required to take under the Regular Grievance procedure, however.

Brown wrote an Informal Complaint dated July 11, 2015, alleging that after he broke his foot on July 3, officers destroyed five Emergency Grievance forms to delay his medical care. *Id*. Ex. B. He also complained about having to walk up and down stairs on his injured foot to shower. Brown's submissions indicate that he mailed this Informal Complaint on July 13, 2015, and that Messer received and logged the Informal Complaint from Brown on July 17, 2015, and issued Brown a receipt. *Id*. Ex. C & Ex. D. The written response to this Informal Complaint is dated August 1, 2015, and states: "No medical orders were issued regarding a Bottom tier or other location recommendation about your cell assignment." *Id*. Ex. B. Brown states that the Informal Complaint form and response were not returned to him until August 25, 2015. *Id.*

Brown also wrote a Regular Grievance, dated August 7, 2015, stating that he had not received a response to his Informal Complaint and complaining about the officers destroying his Emergency Grievances to delay medical care for his injured foot. *Id*. Ex. E. On the back of the Regular Grievance, in a response dated August 12, 2015, Messer stated: "Attach your informal complaint receipt and resubmit." *Id.* The front of this document includes a note, however, stating: "(Original sent to Warden Barksdale 8-9-15) re-submitted with receipt for informal complaint due to Mrs. Messer's refusal to process 8-16-15 with letter to Warden Barksdale." *Id.* Elsewhere, Brown states that he sent the Regular Grievance and the Informal Complaint receipt to Warden Barksdale on August 16, 2015. *Id*. Ex. D. Messer states: "Brown did not resubmit his regular grievance and he did not appeal my intake decision to the Regional Ombudsman. Rather he sent a letter to the Regional Ombudsman asking that the Regional Ombudsman inform me to stop hindering Brown from submitting regular grievances." Messer Aff. ¶ 13, ECF No. 25-3.

Taking the evidence in the light most favorable to Brown, I conclude that he did not properly exhaust all available administrative remedies about the July 3 delay in medical care.

First, Brown's Informal Complaint and Regular Grievance both could properly have been rejected because he included multiple issues. These forms

clearly notified him to focus on only one issue that he wished officials to address. Indeed, his decision to complain about multiple issues in the Informal Complaint led to the response addressing only his desire to avoid stairs while suffering a broken toe, rather than addressing his complaint about officers destroying Emergency Grievances and delaying medical care.

Second, Brown did not promptly initiate his grievance. He waited more than a week after the incident before submitting his Informal Complaint form, thus making it more difficult to complete the steps of the procedure under the applicable deadlines. Messer's issuance of the Informal Complaint receipt on July 17 includes more delay that neither party explains. If the institutional mail often included delays, however, Brown should have been all the more on notice to submit his administrative remedy forms as soon as possible.

Third, OP 866.1 provides prison officials fifteen days from receipt of an Informal Complaint to provide a response and return the form to the inmate. Brown was well aware that the response to his Informal Complaint was due no later than August 1. When he did not receive a response by that date, he was automatically qualified under OP 866.1 to file a Regular Grievance, using the receipt as evidence that he had attempted informal resolution of his issue. Had Brown followed this procedure, he could have filed a timely Regular Grievance before his thirty-day filing period expired on August 2, 2015.

Fourth, Brown fails to show that the grievance procedure was unavailable to him. An inmate who fails to submit properly formatted and timely remedy forms on the issue in his lawsuit may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Brown complained in his letters to Barksdale and the Regional Ombudsman that Messer was not properly processing his grievances. I do not find evidence in the record that Messer took any action contrary to the established procedures or that Messer's actions prevented Brown from filing a timely Regular Grievance, using his Informal Complaint receipt, as explained.

For the stated reasons, I thus find no material fact in dispute on which Brown could persuade a reasonable fact finder that he properly exhausted the established administrative remedies or that those remedies were unavailable to him. The record also clearly reflects that Brown can no longer pursue administrative remedies on this issue. Accordingly, I will grant the Motions for Summary Judgment based on Brown's failure to exhaust administrative remedies

as required under § 1997e(a) before filing this lawsuit and dismiss his claims with prejudice.

## III.

In the alternative, these defendants and Owens argue that they are entitled to summary judgment on the ground of qualified immunity. I must agree.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citation omitted). Qualified immunity involves a two-step inquiry in no particular order: "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). If the court determines that the facts alleged, taken in the light most favorable to the nonmovant, do not show that the officer's conduct violated a constitutional right, then the movant is entitled to summary judgment without further discussion of qualified immunity. *Saucier v Katz,* 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson*).[4]

---

[4] If the court reaches the second prong of the qualified immunity analysis, the inquiry is whether the law put the officer on notice that his conduct would be clearly unlawful. If not, summary judgment based on qualified immunity is appropriate. *Saucier*, 533 U.S. at 202.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment. To prevail on a claim of constitutionally inadequate medical care, a plaintiff must establish that each defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

First, Brown must show that the deprivation suffered or the injury inflicted was, "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).

Second, Brown must show that each defendant was deliberately indifferent — that each one knew of and disregarded an excessive risk to his health or safety. *See Farmer*, 511 U.S. at 837. The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Officials without medical expertise may rightfully rely on the medical staff to determine the appropriate care for an

inmate's injury. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds by *Farmer*).

Brown has not alleged facts showing that on the morning of July 3, 2015, his foot injury presented a serious medical need for immediate treatment. At the most, Brown alleges that he verbally informed officers that morning and into the early afternoon that his foot was broken. He does not describe any symptom or condition during this time that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and citation omitted). Brown alleges that at about 3:00 p.m., a nurse saw his foot and said it was "jacked up." Compl. ¶ 5, ECF No. 1. Still, Brown does not indicate what this term meant or describe the appearance of the foot. Only an hour after the nurse's alleged statement, Brown went to medical for assessment. The medical staff ultimately determined that minimal care was medically necessary — pain medication, ice packs, and elevation of the foot. Even after the X ray showed a fracture, the only additional treatment provided was an ace bandage. Based on these facts, taken in the light most favorable to Brown, I conclude that Brown has not stated a claim that he suffered a serious need for medical care any sooner than he received it on July 3, 2015.

Moreover, Brown does not allege facts showing deliberate indifference. As stated, he does not show that any of the defendants knew his injury posed a serious

risk of harm to him without emergency medical attention. At the most, he alleges that some defendants intentionally delayed his access to medical care. He does not demonstrate, however, that this delay aggravated his injury at all. *See Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) (unpublished) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment)).

Because Brown thus fails to show a constitutional deprivation related to his medical care in this case, I conclude that the defendants are entitled to qualified immunity. Therefore, I will grant the Motions for Summary Judgment and Owens' Motion to Dismiss on this ground and dismiss Brown's claims with prejudice. Based on the same reasoning, I must also summarily dismiss Brown's claim against John Doe. *See* 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner's claims against governmental defendant for failure to state a claim).

IV.

For the reasons stated, I will grant the Motions for Summary Judgment based on Brown's failure to exhaust administrative remedies. In the alternative I will grant these motions and Owens' Motion to Dismiss on the ground of qualified immunity and dismiss all claims against the named defendants with

prejudice.  I will also summarily dismiss all claims against John Doe under 28 U.S.C. § 1915A(b)(1).

A separate Order will enter herewith.

DATED:  August 7, 2017

/s/  James P. Jones
United States District Judge